IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES BLEDSOE,

                Petitioner,

        vs.

JOE A. LIZARRAGA, Acting Warden,
Mule Creek State Prison,[1]

                Respondent.

No. 2:11-cv-1590-JKS

MEMORANDUM DECISION

Charles Bledsoe, a state prisoner represented by counsel, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Bledsoe is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the Mule Creek

State Prison.  Respondent has answered, and Bledsoe has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

A jury convicted Bledsoe of six counts of murder, six counts of gross vehicular

manslaughter, and one count of felony hit and run resulting in injury or death.  Upon direct

appeal of his conviction, the California Court of Appeals summarized the following facts

underlying Bledsoe's conviction:

> [Bledsoe] had DUI convictions in both 2000 and 2006.  Evidence also showed
> that in 2005, he nearly hit a car when he ran a stop sign while drunk.  In connection with
> one DUI conviction, [Bledsoe] acknowledged in writing that he had been advised that
> driving under the influence was "extremely dangerous to human life" and that if he did so
> again, "and as a result of my driving someone is killed, I can be charged with murder."
> [N.1]
>     [N.1] Such advisement is required by [California] Vehicle Code section 23593.

---

[1]     Joe A. Lizarraga, Acting Warden, Mule Creek State Prison, is substituted for M.
Martel, former Warden, Mule Creek State Prison.  FED. R. CIV. P. 25(c).

Around 5:00 to 6:00 p.m. on September 16, 2006, [Bledsoe] was seen intoxicated in a Marysville store. Later that evening, he seemed intoxicated in a Yuba City bar and appeared to be causing trouble, so the bouncer ejected him. As [Bledsoe] left in his vehicle, "he was smoking his tires" and then "really hit the gas and took off" and almost hit two other vehicles. He then almost hit a vehicle near a bridge, missing it by inches. Eventually, [Bledsoe] hit another vehicle, which ended up wrapped around a tree. All six occupants of that vehicle were killed.

[Bledsoe] appeared at a nearby market and asked to use the phone, and later asked a customer to give him a ride home. He then entered a house near the store and told the occupants he had just been in a crash and ran from the freeway, and asked if he could sleep in a car parked outside; the owner refused, but did not know if [Bledsoe] slept in the car anyway. The next morning, a friend dropped [Bledsoe] off near his home. [Bledsoe] was spotted walking near his home, was detained by a peace officer, and was taken to the hospital, where a blood sample was drawn. [Bledsoe's] blood alcohol level would have been at least .30 percent at the time of the collision.

Sergeant Charles Swift, a member of a California Highway Patrol Multidisciplinary Accident Investigation Team (MAIT), testified that he interviewed [Bledsoe] on the morning of September 17, 2006, for over two hours. [Bledsoe] said that he had attended a mandatory 12-week alcohol class where "they actually talk about driving under the influence and the ramifications of that as well as drug-related incidents." [Bledsoe] said he was aware that driving under the influence could hurt or kill someone, which "is the reason why he doesn't like to drink and drive."

[Bledsoe] admitted he had been out drinking that night but claimed a friend had been driving, and eventually [Bledsoe] went home to go to sleep. He said he got up early the next morning and went for a walk, and was arrested by an officer near his home. [Bledsoe] refused to give the name of his friend, stating "that was his business and he would call that witness at court."

After Sergeant Swift confronted [Bledsoe] with the evidence against him, [Bledsoe] "became agitated and defensive" and said the witnesses were liars. "There came a point in time in the interview that Mr. Bledsoe stated that he didn't want to talk to us anymore. He was finished with the interview. Right around that same time we decided that as far as this interview and interrogation was concerned, Mr. Bledsoe was not going to tell us the truth. So we ended the interview." This was after nearly an hour of denials.

Sergeant Swift then took some photographs of [Bledsoe] and prepared to leave. However, another officer told him that [Bledsoe] had said he "wanted to talk to us again." Over a *relevancy* objection, Sergeant Swift testified that when he spoke with [Bledsoe] again, [Bledsoe] "said that he loves to drink, considered himself an alcoholic, and said that he drinks to black out, to the level of blackout."

In argument, the prosecutor in part pointed out that even after [Bledsoe] signed the admonition stemming from a prior DUI conviction he continued to drink, and told Sergeant Swift he drank to get drunk. The defense argued the crimes were not murders, but lesser offenses.

The trial court sentenced Bledsoe to a total imprisonment term of 64 years to life.

Through counsel, Bledsoe appealed his conviction, arguing that the trial court made two

errors regarding statements he made after his arrest.  *Id.*  First, Bledsoe asserted that the

prosecutor impermissibly relied on the fact that Bledsoe invoked his right to remain silent, which

is commonly referred to as a *Doyle* error.  *See Doyle v. Ohio*, 426 U.S. 610 (1976); *id.*  He also

claimed that the trial court erred in admitting an officer's testimony regarding Bledsoe's

statement that he is an alcohol who "drinks to black out."  The appellate court rejected Bledsoe's

claims and affirmed his conviction in a reasoned opinion.  Bledsoe's petition for review to the

supreme court was summarily denied on October 13, 2010.

Bledsoe timely filed a Petition for a Writ of Habeas Corpus to this Court on June 13,

2011.

## II. GROUNDS/CLAIMS

In his counseled Amended Petition, Bledsoe asserts the same claims that he raised to the

state courts on direct appeal of his conviction.  First, Bledsoe contends that he was denied his

rights to due process and a fair trial when an officer testified that Bledsoe had invoked his right

to remain silent during interrogation.  Bledsoe additionally argues that the trial court erroneously

admitted improper character evidence in violation of his due process rights.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536

U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

## IV. DISCUSSION

Claim One: *Doyle* Claim

In his Petition, Bledsoe states:

> After about an hour of interrogation, Mr. Bledsoe informed the investigators that
> he did not want to talk any more, that the interview was over.  Some time later, under
> unknown circumstances, it is alleged that Mr. Bledsoe informed a different officer that he
> wanted to speak again.  That officer informed [Investigator] Swift.  When [Investigator]
> Swift re-entered the interview room, Mr. Bledsoe stated: "Well, I'm confused.  You
> know, all's I got to say is that it was me driving."

An officer testified at trial:

> There came a point in time in the interview that Mr. Bledsoe stated that he didn't
> want to talk to us anymore. He was finished with the interview. Right around that same
> time we decided that as far as this interview and interrogation was concerned, Mr.
> Bledsoe was not going to tell us the truth. So we ended the interview.

Bledsoe claims that the officer's testimony that Bledsoe invoked his right to remain silent

during interrogation constituted a *Doyle* error that violated Bledsoe's rights to due process and a

fair trial.  The Court of Appeals rejected this claim on direct appeal, determining that:

> [Bledsoe] did not testify; therefore, he was not impeached.  Further, the evidence
> was that [Bledsoe] *chose to speak* and did so for about an hour, denying culpability, until
> he told Sergeant Swift that he was "finished," with his story.  Soon thereafter, [Bledsoe]
> initiated another discussion, without exercising his right to silence.  Therefore, because
> [Bledsoe] chose to speak, we fail to see how he was penalized for exercising his right not
> to speak.

As an initial matter, Bledsoe appears to suggest in his Petition before this Court that the

*Miranda*[2] warnings he received were inadequate.  He states that the "officers and investigators in

this case played fast and loose with the constitution" by "ask[ing] substance questions prior to

advising Mr. Bledsoe of his right to remain silent" and "press[ing] on questioning Mr. Bledsoe"

after he had exercised his right to remain silent.  Indeed, the appellate court's conclusion that

Bledsoe's termination of the conversation was not an invocation of his *Miranda* or Fifth

Amendment rights may be problematic in light of reasoning employed in this Circuit.  *See*

*Moreno v. Borg*, No. 90-55231, 1990 WL 212649, at \*2 (9th Cir. Dec. 18, 1990) (suggesting that

"I don't want to talk anymore" is an invocation of *Miranda* rights).   However, Bledsoe did not

allege before the state courts that the warnings or interrogation procedures were faulty; such

claims are therefore unexhausted and are not properly before this Court.  *See Duncan v. Henry*,

513 U.S. 364, 365 (1995) (exhaustion of state remedies requires the petitioner to fairly present

federal claims to the state courts in order to give the state the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights); *see also Rhines v. Weber*, 544 U.S.

269, 275-78 (2005) (unexhausted claims must be dismissed).

Under *Doyle*, a prosecutor's comment for impeachment purposes on a defendant's post-

*Miranda* silence violates Due Process.  *Doyle*, 426 U.S. at 617-19; *see Cook v. Schriro*, 538 F.3d

1000, 1019 (9th Cir. 2008).  The rationale for this rule "rests on the fundamental unfairness of

implicitly assuring a suspect that his silence will not be used against him and then using his

silence to impeach an explanation subsequently offered at trial."  *Wainwright v. Greenfield*, 474

---

[2]       *See Miranda v. Arizona*, 384 U.S. 436 (1966).

U.S. 284, 291 (1986) (citation and internal quotation marks omitted) (holding that prosecution

may not use defendant's silence during case-in-chief).

Bledsoe contends that the appellate court erred in determining that, because Bledsoe did

not testify, he was not impeached and the rule of *Doyle* therefore was not implicated.  Citing the

Ninth Circuit's decision in *United States v. Whitehead*, 200 F.3d 634, 638 (9th Cir. 2000),

Bledsoe asserts that "[t]he rule from *Doyle* has been strictly applied so that any description of a

defendant's silence following arrest and *Miranda* warning, whether made in the prosecutor's

case in chief, on cross-examination, or in closing arguments, constitutes a violation of the Due

Process Clause."  In *Wainwright*, the Supreme Court read *Doyle* as prohibiting any use of a

defendant's post-*Miranda* silence to prove an issue in the prosecution's case; in that case, the

defendant's exercise of his *Miranda* rights was used to prove his competence and disprove an

insanity defense.  474 U.S. at 292-95.  It therefore appears that the appellate court may have

incorrectly concluded that *Doyle* is implicated only where the prosecution attempts to impeach a

defendant who offers an exculpatory explanation during direct testimony that was not previously

disclosed to the police.

However, this Court does not need to determine that issue because, even assuming that

*Doyle* extends to situations outside of impeachment and that the trial court committed *Doyle*

error, such error was harmless.  *See Brecht v. Abrahamson*, 507 U.S. 619, 622, 629 (1993)

(*Doyle* error subject to harmless error analysis).  As the appellate court concluded in its

alternative holding, "There was no dispute that [Bledsoe] was the driver, that he was extremely

drunk, that he drove recklessly before the accident, and that he had been warned about the

dangers of drunk driving in the past.  Evidence that [Bledsoe] *temporarily* stopped the interview

7

could not have affected the verdict." The appellate court's harmless determination does not

contravene or unreasonably apply Federal law. This fact also dooms Bledsoe's companion

ineffective assistance of counsel claim. Because any alleged error is harmless, counsel could not

have been ineffective for failing to object to it. *See Lockhart v. Fretwell*, 506 U.S. 364, 374

(1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute

prejudice under a *Strickland v. Washington*, 466 U.S. 668, 687 (1984), ineffective assistance of

counsel claim). Bledsoe is therefore not entitled to relief on his *Doyle* error claim.

Claim Two: Propensity Claim

At trial, an officer testified that Bledsoe "said that he loves to drink, considered himself

an alcoholic, and said that he drinks to black out, to the level of blackout." Bledsoe claims that

this testimony was improper character evidence introduced to establish that Bledsoe had a

propensity to engage in the type of conduct of which he was charged. The appellate court

rejected this claim on direct appeal of his conviction. The appellate court noted that California

Evidence Code § 1101(a) provides that "evidence of a person's character or a trait of his or her

character (whether in the form of an opinion, evidence of reputation, or evidence of specific

instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a

specified occasion." The appellate court determined that the officer's statement was nonetheless

admissible under § 1101(b), which provides that evidence of an an act committed by a person is

admissible when it is relevant to prove knowledge and is not used to show his general

disposition. The appellate court reasoned that "the evidence showed [Bledsoe's] knowledge of

the effects of alcohol, and tended to show his mental state *on this occasion*, rather than his

character or general disposition."

8

The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the Bill of Rights. *Estelle*, 502 U.S. at 73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Federal Rule of Evidence 404(b), the federal counterpart to California Evidence Code § 1101(b), states:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . [It] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) (citations omitted).  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." FED. R. EVID. 401.

Under these guidelines, this Court cannot find unreasonable or contrary to Federal law the appellate court's determinations that the evidence was relevant, showed the defendant's mental state on the occasion of the charged crime, and was not unduly prejudicial.  Moreover,

the appellate court's determination that an alleged error was harmless is also reasonable in light

of the evidence against Bledsoe.   *See Brecht*, 507 U.S. at 622, 629 (harmless error standard

applies to evidentiary errors).   Bledsoe therefore cannot prevail on his propensity claim either.

### V. CONCLUSION AND ORDER

Bledsoe is not entitled to relief on any ground raised in his Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254

for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.   *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).   Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.   *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 5, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge